IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE SAEZ-NAVARRO, AIDA RUTH
MARTINEZ and their conjugal partnership;
BAYXEL SAEZ-MARTINEZ

Plaintiffs

vs                                                                          CIVIL 08-1604CCC

BANCO SANTANDER PUERTO RICO;
SANTANDER BANCORP.;
MARSTERS REAL ESTATE;
RAFAEL MALDONADO;
ACRES-APPRAISAL CONSULTING &
REAL ESTATE SERVICES;
CARMEN L. TORRES,
JOSE PEREZ-VALENTIN
MADDY ANGELA BATISTA-SALAS and
their community property;
JOSE ANGEL PEREZ-BATISTA, EMI
DURAN-AMEZQUITA and their community
property;
JOHN DOE, JIM DOE and JILL DOE;
COMPANIES A, B, C, D, and E;
INSURANCE ABC, INSURANCE XYZ

Defendants

## OPINION AND ORDER

This action arises from plaintiffs' dissatisfaction with an apartment they purchased in Condominium Torres de Andalucía in Río Piedras, Puerto Rico.  The action was first filed in the Puerto Rico court, solely on the basis of state law.  Plaintiffs then filed the case at bar, alleging the same facts and causes of action against the same parties, bootstrapping the action into federal court with the addition of a claim under Residential Lead-Based Paint Hazard Act, 42 U.S.C. §4851, et seq and §3533 (Lead Paint Act).[1]

The action is now before us on a Motion to Dismiss filed July 30, 2009 (**docket entry 75**) by defendant Marsters Real Estate, Inc., the realtor providing the services through which the option for purchase and sale of the apartment was arranged.  Plaintiffs opposed the motion (docket entry 83).  It is Marsters' contention that the former owners and

---

[1] Plaintiffs also bring supplemental claims under Puerto Rico law.

CIVIL 08-1604CCC                                            2

the sellers of the property, José Pérez-Valentín, Maddy Batista-Salas and José Angel Pérez-Batista are indispensable parties and, therefore, plaintiffs' failure to include them in the suit warrants the dismissal of the action.

We initially note that plaintiffs did, in fact, include the sellers in this suit. The claims against them, however, were dismissed by reason of the doctrines of res judicata and collateral estoppel, based on the dismissal with prejudice of the prior action.

The Motion to Dismiss Standard

**Indispensable Parties – Judicial Estoppel**

Marsters argues that pursuant to the doctrine of judicial estoppel, plaintiffs are bound by the arguments and admissions they presented in an earlier motion. The judicial estoppel doctrine binds a party to prior judicial declarations and precludes it from contradicting them in a subsequent proceeding involving the same issues and parties. See, Re-Ace, Inc. v. Wheeled Coach Indust., 317 F. Supp. 2d 84, 85-86 (D. Puerto Rico 2004). That Pérez-Valentín and Batista-Salas are indispensable parties was first advanced by plaintiffs themselves in their Motion Showing Cause (docket entry 56), in response to the Court's order to show cause why these defendants should not be dismissed (docket entry 48). Pérez-Valentín and Batista-Salas' indispensability was the sole basis for plaintiffs' opposition to the dismissal.

Plaintiffs' Motion Showing Cause included the following arguments: At ¶2, that the claims against co-defendants Pérez-Valentín and Batista-Salas must not be dismissed because as owners and sellers of the property under (sic) controversy both are indispensable parties without whom this Court could not impart complete justice; at ¶¶3 and 4, that the sellers of the property are indispensable parties for the recession of the sales deed,

CIVIL 08-1604CCC                              3

damages under Article 1802 of the Civil Code of Puerto Rico and claims under the Lead Paint Act.  Plaintiffs finish their motion with the following summary:

> 5. Therefore a complete remedy in favor of the plaintiffs cannot be rendered if the actions against them are dismissed. It is necessary that co-defendants Pérez-Valentín and Batista-Salas remain as parties in this case.  A dismissal of the claim against them will lead to injustice.

The question to be addressed at this juncture is whether plaintiffs are judicially estopped from rejecting their prior position that Pérez-Valentín and Batista-Salas are indispensable parties, because it hinders the theory on which they now seek to continue their case against Marsters.

"As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claimant that is inconsistent with a position taken by that litigant either in a prior proceeding or in an earlier phase of the same legal proceeding."  Muskat v. U.S., 554 F.3d. 181, 196 (1st Cir. 2009), quoting InterGen N.V. v. Grina, 344 F.3d. 134, 144 (1st Cir. 2003).

> There are at least two preconditions to a successful claim of judicial estoppel. First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive.  Second, the responsible party must have succeeded in persuading a court to accept its prior position.

Muskat, supra, at 196.

Plaintiffs' contention for the purposes of this motion, that the sellers are not indispensable parties, is directly inconsistent with their prior position.  Therefore, the first precondition for a judicial estoppel defense is fulfilled.  The second precondition, however, has not been met.  Because the focus of our order to show cause was the applicability of the res-judicata doctrine, an issue that was not even mentioned in their Motion Showing Cause, the plaintiffs' earlier characterization of the sellers as indispensable parties was irrelevant to the issues before us. The Court, therefore, neither considered as "accepted" nor addressed plaintiffs' indispensable-party argument in the earlier decision.  See, docket entry 59.  That

CIVIL 08-1604CCC                                                    4

is, the Court not having previously made a determination on the sellers' indispensability, plaintiffs are not barred from abandoning their former theory.

**Indispensable Parties – Factual Analysis**

With regard to the required joinder of parties, Fed.R.Civ.P. 19(a)(1)(A) provides that a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if, in that person's absence, the court cannot accord complete relief among existing parties. Rule 19(b) provides that if an indispensable party cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.

Plaintiffs seek rescission of the purchase agreement and the mortgage contract as a remedy for the breach-of-contract claims. The Court of Appeals for the First Circuit has stated, however, that in an action seeking rescission of a contract, all parties to the contract and others having a substantial interest in it are indispensable parties. B. Fernández & Hnos. Inc. v. Kellogg USA, Inc.., 440 F.3d. 541, 548 (1st Cir. 2006) citing Acton Co., Inc. of Mass. v. Bachman Foods, Inc., 668 F.2d 76, 81-82 (1st Cir. 1982). Therefore, in the absence of the sellers and the bank, the Court cannot provide the requested remedies based on plaintiffs' contracts with these former defendants.

Moreover, plaintiffs tacitly acknowledge that the claims for rescission of the contracts for the purchase of the apartment and for the mortgage require the presence of the sellers and the banks, respectively, when they state:

> Therefore at the present time, the claims before this Honorable Court are the claims against defendant Marsters Real Estate own negligent acts (sic) and:
>
> a) violations to the Residential Lead-Based Paint Hazard Reduction Act of 1992,

CIVIL 08-1604CCC                                5

>    b) violations to Law No. 93 of May 16, 2006 ("Law to Regulate in Puerto Rico the Real Estate Business and the Profession of Real Estate Broker); and
>
>    c) own tort actions and damages pursuant to Articles 1802 and 1803 of the Civil Code of Puerto Rico.

Plaintiffs' Opposition, ¶17, pp.6-7

Therefore, the claims requiring the sellers as indispensable parties do not survive.

We now turn to the claim under the Lead Paint Act. Paragraph 20 of the complaint alleges that the mandatory disclosure of the lead hazard under that statute is applicable to Marsters, as a agent of the sellers. As delineated in their opposition, plaintiffs aver that Marsters failed to comply with the federal law related to the awareness and disclosure of lead contaminants in properties constructed in or before 1978, such as the apartment in issue.

**Analysis**

The Lead Paint Act requires the disclosure of information concerning lead upon transfer of residential property. The law provides, in pertinent part, with respect to the disclosure of lead-based paint hazards in the purchase and sale or lease of target housing:[2]

>    . . . before the purchaser or lessee is obligated under any contract to purchase or lease the housing, the seller or lessor shall –
>
>    (A) provide the purchaser or lessee with a lead hazard information pamphlet, as prescribed by the Administrator of the Environmental Protection Agency...;
>
>    (B) disclose to the purchaser or lessee the presence of any known lead-based paint, or any known lead-based paint hazards, in such housing and provide to purchaser or lessee any lead hazard evaluation report available to the seller or lessor;
>
>    and

---

[2] 42 U.S.C. § 4851b(27) defines "target housing" as "any housing constructed prior to 1978, except housing for the elderly or persons with disabilities . . . or any 0-bedroom dwelling. In the case of jurisdictions which banned the sale or use of lead-based paint prior to 1978, the Secretary, at the Secretary's discretion, may designate an earlier date.

CIVIL 08-1604CCC                                    6

> (C) permit the purchaser a 10-day period (unless the parties mutually agree upon a different period of time) to conduct a risk assessment or inspection for the presence of lead-based paint hazards.

42 U.S.C. §4852d(a)(1).

With regard to the responsibility of a real estate agent such as Marsters, the law provides, at 42 U.S.C. §4852d(a)(4):

> Whenever a seller or lessor has entered into a contract with an agent for the purpose of selling or leasing a unit of target housing, the regulations promulgated under this section shall require that the agent, on behalf of the seller or lessor, to ensure compliance with the requirements of this section.

Thus, Marsters had the obligation to ensure that the plaintiffs were provided with the required information and materials by the sellers. Section 4852d(b)(3) provides, "Any person who knowingly violates the provisions of this section shall be jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual."  The law providing a civil monetary remedy for violations of the type alleged by plaintiffs, their action against Marsters under the Lead Paint Act proceeds.

With regard to the remaining claims under Puerto Rico laws, Law No. 93 of May 16, 2006 and Articles 1802 and 1803 of the Civil Code of Puerto Rico, we decline to exercise supplemental jurisdiction over these state claims presently before the Superior Court of Puerto Rico in a more advanced stage than this action.

For the above stated reasons, the Motion to Dismiss (**docket entry 75**) is GRANTED IN PART AND DENIED IN PART.  The motion is GRANTED with prejudice as to the claims seeking rescission of the purchase and sale contract and the mortgage contract, and without prejudice as to the remaining supplemental claims.  The Motion is DENIED as to the claim under the Residential Lead-Based Paint Hazard Reduction Act.

CIVIL 08-1604CCC                              7

      Marsters shall file its answer to the complaint no later than November 30, 2009.  The case will be set for pretrial and settlement conferences and jury trial by separate order.

      SO ORDERED.

      At San Juan, Puerto Rico, on November 13, 2009.

                                      S/CARMEN CONSUELO CEREZO
                                      United States District Judge